BRITTON DAVIS ET AL. v. THOMAS HERTMAN ET AL.

Decided October 26, 1898.

**1. Sale Under Trust Deed.**

The sale of land by a trustee whose grantor only held an equitable title to the same places the purchaser in the same position as the trustee's grantor.

**2. Superior Legal Title—Conveyance of—Limitations.**

Where a vendor of land, still holding the superior legal title, conveys to one to whom he has assigned the purchase money notes, this vests the legal title in the assignee, though the notes be barred by limitations.

**3. Liens—Assignment of.**

The assignment of a junior mechanic's lien upon realty does not, in the absence of fraud, carry with it an assignment of a prior vendor's lien held by the assignor, nor will a sale of the property under the mechanic's lien vest the superior legal title in the purchaser.

APPEAL from El Paso. Tried below before Hon. A. M. WALTHALL.

*F. B. Sexton,* for appellants.

*W. B. Brack* and *Millard Patterson,* for appellees.

FLY, ASSOCIATE JUSTICE.—Britton Davis and the El Paso National Bank instituted this action of trespass to try title to certain land in the city of El Paso, against appellees, Tom Hertman, W. J. Glenn, O. T. Bassett, W. B. Brack, and Millard Patterson. Hertman answered disclaiming any interest in the property, and that he was a tenant of Brack and Patterson, who are owners of the land. Bassett and Patterson pleaded general denial and not guilty, and by amendment set out fully their title and claim to the land. The court instructed a verdict for Brack and Patterson.

It was shown that the Campbell Real Estate Company was the common source.

1. On June 17, 1887, the Campbell Real Estate Company conveyed the property to W. J. Jones, by a warranty deed reciting a consideration of $3330.72, no vendor's lien being mentioned in the deed. It was filed for record September 15, 1888.

2. On June 29, 1887, W. J. Jones executed a deed of trust covering the whole of the property involved to G. T. Newman, to secure the Campbell Real Estate Company in the payment of a note executed June 17, 1887, for $1665.36, etc., the note being given for part payment of the land in controversy. This deed of trust was filed for record June 29, 1887.

3. On June 29, 1887, W. J. Jones conveyed the same property to Holbrook & Foucar for the recited consideration of $2081.70, and as a further consideration the payment of the note of Jones for $1665.36 above mentioned, and also the payment of the note of Holbrook & Foucar, executed to Jones, for $416.34, due June 17, 1888. This deed was filed for record July 18, 1887.

4. It was agreed that "a deed of trust of date September 15, 1888, proven to have been executed by E. L. Foucar for himself and, being duly authorized, for Francis N. Holbrook, covering the property in controversy; was executed in the usual form, to secure a note for $2000 described in said deed of trust, due in one year from said date, payable to the order of O. T. Bassett, said deed of trust being executed to C. N. Buckler, as trustee, to secure O. T. Bassett, beneficiary, etc. Said deed of trust was duly filed for record on September 15, 1888. It was admitted that a trustee's sale was made on the 7th day of May, 1895, by C. N. Buckler, trustee, at the request of O. T. Bassett, the owner of the $2000 note, in conformity with the provisions of said deed of trust, and that said sale was in all respects regular. And the trustee's deed executed by C. N. Buckler, trustee, to O. T. Bassett, shown to have been duly recorded, was introduced in evidence, and by the same the property was conveyed by C. N. Buckler, as trustee, to O. T. Bassett, on the 7th day of May, 1895."

5. By a deed of date May 13, 1895, O. T. Bassett conveyed the property in controversy to W. B. Brack and Millard Patterson. Said deed was duly filed for record July 5, 1895, etc.

6. On May 31, 1895, the Campbell Real Estate Company executed a quitclaim deed to W. S. Bolton and W. E. Kneeland, or their vendee, "or purchasers under them," for the recited consideration of $1956.84, the amount of the purchase money note including interest to the time of the payment, given by W. J. Jones to the Campbell Real Estate Company, on the 17th day of June, 1887. This deed recites that the Jones note had been paid off and discharged to the Campbell Real Estate Company.

7. The receipt of date November 30, 1889, by the agents of the

Campbell Real Estate Company, shows that Bolton & Kneeland paid $1956.84 in purchase of the Jones note.

8.   It was admitted that W. E. Kneeland is dead, and that Mrs. Eva O. Kneeland is the independent executrix and sole devisee under his will, and that she was such on January 10, 1896. And the defendants Brack and Patterson introduced a deed from Mrs. Eva O. Kneeland, for herself and as independent executrix of the estate of W. E. Kneeland, and as sole devisee under his will, conveying to them the property in controversy.

9.   A judgment recovered in the County Court of El Paso County in the case of H. B. Stevens against W. S. Bolton, the judgment being of date of November 2, 1897; also an order of sale under the judgment and the sheriff's return upon the same, showing that W. S. Bolton's interest in said property was conveyed to the defendants Brack and Patterson by a sale made under the order of sale on January 3, 1898.

10.   On October 31, 1889, Spencer & Rattenbury assigned to W. E. Kneeland and W. S. Bolton their mechanic's lien for work done and material furnished in the erection of sampling works on the real estate involved in this suit for Holbrook & Foucar in 1889.

11.   On September 18, 1889, Spencer & Rattenbury filed suit in the District Court of El Paso County to foreclose their lien on the land in controversy. O. T. Bassett was made defendant in the case originally, but was subsequently, before the filing of the second amended original petition of the plaintiffs, Spencer & Rattenbury, dismissed out of the case. A judgment was rendered in favor of Spencer & Rattenbury and against Holbrook & Foucar in the case mentioned on January 4, 1890.

12.   On December 30, 1890, W. S. Bolton assigned his interest in the mechanic's lien claim of Spencer & Rattenbury to Britton Davis. On the 7th day of April, 1890, W. E. Kneeland assigned his interest in the mechanic's lien claim of Spencer and Rattenbury to the El Paso National Bank.

13.   No order of sale had been issued on the judgment in the case of Spencer & Rattenbury against Holbrook & Foucar up to February, 1894, and Britton Davis and the El Paso National Bank, as assignees of W. S. Bolton and W. E. Kneeland, filed their petition in the District Court of El Paso County to revive in their own favor the judgment of Spencer & Rattenbury against Holbrook & Foucar. No persons were made parties defendant in the suit No. 1905 to revive this judgment, excepting Holbrook & Foucar. Holbrook was cited by a notice as a nonresident and Foucar was cited by publication.

14.   On March 5, 1895, the sheriff of El Paso County, by virtue of an order of sale issued under the revived judgment, sold the property in controversy to satisfy the mechanic's lien to appellees, and duly executed to them a deed which was properly acknowledged and recorded.

15.   On June 2, 1897, R. E. Beckham, as receiver of the El Paso National Bank, conveyed the interest of said bank in the property in controversy to Britton Davis.

Under the well settled doctrine of Texas courts, the sale of the land to Jones by the real estate company vested in him the equitable title to the land, the superior legal title, by virtue of the reservation of the vendor's lien, remaining in the vendor or his assignees until the purchase money was paid. Abernethy v. Bass, 9 Texas Civ. App., 239; Hale v. Baker, 60 Texas, 219; Tom v. Wollhoefer, 61 Texas, 279. The equitable title held by Jones was conveyed by him to Holbrook & Foucar, who executed to O. T. Bassett a deed of trust on the land to secure him in the payment of a debt for $2000. It is admitted by appellant that this transaction was fair and legal, and that there was a valid sale thereunder. There is no disputing the fact that when the deed of trust was executed no lien existed except that for the purchase money, and that it was long after its execution and record that the mechanic's lien was placed upon the property.

The sale of the property by the trustee placed the purchaser in the same position as that occupied by Holbrook & Foucar towards the original vendor, that is to say, he held the equitable title to the land, while the superior title was still held by the original vendor or its assignee. The position of Bassett, the purchaser at the trust sale, was a better one than that of Holbrook & Foucar, however, because it had extinguished the subsequent mechanic's lien that rested upon the land, and by payment of the purchase money he could have at once vested the legal title in himself. No one will combat the proposition, that if the original vendor had retained the note no sale under the mechanic's lien could have affected its title, and that a transfer of the legal title by it to appellees would have made them the holders of the legal title. But in November, 1889, the original vendor assigned the purchase money note to Kneeland and Bolton, and by such assignment the original vendor was placed in the position of a trustee holding the legal title for its assignees, and the transfer by it of the title vested it in the purchasers of the note, even though the latter was barred by limitation. Abernethy v. Bass, above cited; White v. Cole, 87 Texas, 500.

The purchase by Kneeland and Bolton on November 30, 1889, of the purchase money note, made them the owners of two liens upon the land, the vendor's lien being superior to all other liens and the mechanic's lien being inferior to the lien held by Bassett by virtue of the deed of trust; that is they occupied the position held by the original vendor in the one case, and that of Spencer & Rattenbury in the other. While occupying these positions in 1890, they transferred their interest in the mechanic's lien judgment to appellants, and afterwards the land was sold under said judgment and appellants became the purchasers. Their contention is that the legal title held by Kneeland and Bolton was, by virtue of the sale under the judgment foreclosing the mechanic's lien, vested in them. This contention can be sustained only upon the theory that the transfer of the judgment by Kneeland and Bolton carried with it the legal title to the land, and the sale vested the title in them, or that the superior title being in them, the sale of the land divested them of such title. In

the written transfers made by Kneeland and Bolton of their interest in the judgment there were no covenants of warranty or representations to the effect that they held no other liens on the land, and we have seen no authority to the effect that the assignment of a junior lien carries with it, in equity in the absence of fraud, an assignment of prior liens held by the assignor, and we can not see how the legal title held by Kneeland and Bolton to secure their debt was affected by a judgment against Holbrook & Foucar. As above intimated, if the original vendor had, at the time of the purchase by appellants, under the judgment, still held the superior title, no one would contend that its title would have been affected, and the fact that the sellers of the judgment owned the legal title would not, as we think, change the proposition, and when their title was purchased by appellees, Brack and Patterson, they became invested with the legal as well as the equitable title to the land.

We conclude that the trial court did not err in instructing a verdict for W. B. Brack and Millard Patterson, and the judgment is therefore affirmed.

*Affirmed.*